1  Thomas Doniger  (Bar No. 76263)
   Henry D. Fetter (Bar No. 76382)
2  DONIGER & FETTER
   2229 N. Berendo Street
3  Los Angeles, California 90027
   (323) 660-9700
4  donigerandfetter@yahoo.com

5  Attorneys for
   Defendant Promofilm US, LLC
6

7

8              UNITED STATES DISTRICT COURT

9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  LUFTU MURAT UCKARDESLER,          )   CASE NO. CV 09-01467 JFW (MANx)
    GLOBAL AGENCY, LTD.               )
12                                    )   Assigned to the Honorable
              Plaintiffs,             )   John F. Walter
13                                    )
       v.                             )   DEFENDANT PROMOFILM US, LLC'S
14                                    )   NOTICE OF MOTION AND MOTION FOR
    KAZA AZTECA AMERICA, INC., DBA    )   SUMMARY JUDGMENT ON FIRST AND
15  AZTECA AMERICA, PROMOFILMS US     )   SECOND CLAIMS FOR RELIEF OR, IN
    LLC, AND DOES 1 THROUGH 10,       )   THE ALTERNATIVE FOR SUMMARY
16                                    )   ADJUDICATION OF ISSUES [F.R.Civ.P.
              Defendants.             )   56(b), (d)]]
17                                    )
                                      )   [Memorandum of Points and Authorities
18                                    )   Attached Hereto, Statement of Uncontroverted
                                      )   Facts and Conclusions of Law, Supporting
19                                    )   Declarations,  Deposition Excerpts, and
                                      )   [Proposed] Statement of Decision filed
20                                    )   concurrently herewith]
                                      )
21                                    )   Date:      April 26, 2010
                                      )   Time:      1:30 p.m.
22                                    )   Courtroom: 16
                                      )
23  _____  )   Trial Date: June 8, 2010
                                          Pre-Trial Conf. Date:
24                                        May 21, 2010

25       TO THE INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

26       PLEASE TAKE NOTICE that on April 26, 2010 at 1:30 p.m., or as soon thereafter as

27  counsel may be heard, in Courtroom 16 of the Honorable John F. Walter, United States District

28  Judge of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California,

                                        1

1   defendant Promofilm US, LLC ("Promofilm") will bring on for hearing its motion, pursuant to

2   F.R.Civ.P 56(b), for entry of summary judgment on Plaintiffs' First Claim for Relief (Copyright

3   Infringement) and Second Claim for Relief (Contributory Copyright Infringement), the sole

4   claims alleged against Promofilm.

5        This motion is made on the grounds that the uncontroverted facts establish that (1)

6   Plaintiff Global Agency Ltd. is not the owner of the copyrights at issue in this action and

7   therefore lacks standing to sue for copyright infringement; and (2) these claims do not present

8   genuine issue of fact for trial on the claims that defendant Promofilm directly and contributorily

9   infringed the copyrighted writings at issue in this action.  Grant of the motion will resolve all

10  claims asserted by plaintiffs  against defendant Promofilm  and there is no just reason to delay

11  entry of final judgment in the within  action favor of defendant Promofilm.

12       PLEASE TAKE FURTHER NOTICE that at said time and place, defendant Promofilm

13  will move the Court, in the alternative, for summary adjudication that the following issues

14  present no genuine issue of fact for trial: (1)that Plaintiff Global Agency Ltd. is not the owner of

15  the copyrights at issue in this action and therefore lacks standing to sue for copyright

16  infringement; (2) that the First Claim for Relief presents no genuine issue material of fact for trial

17  on the claim that  defendant Promofilm is liable for copyright infringement; and (3) that the

18  Second Claim for relief presents no genuine issue of fact for trial on the claim that defendant

19  Promofilm is liable for contributory copyright infringement.

20       This motion is filed following a conference of counsel pursuant to Local Rule 7-3 which

21  took place, by telephone, on March 17, 2010 and which failed to resolve the matters at issue on

22  this motion.

23       This motion is based on this Notice of Motion and Motion, the attached Memorandum of

24  Points and Authorities, the Statement of Uncontroverted Facts and Conclusions of Law and

25  Declarations of Thomas Doniger,  Pelin Akat,  Martin Halac,  Aviva Bergman and Ellen Seiter,

26  and the exhibits thereto, and the Excerpts from the Depositions of Luftu Murat Uckardesler and

27  Izzet Ressam filed concurrently herewith, upon all of the records and papers on file in this action

28  and upon such other and further argument and evidence as may be presented to the Court at, or in

2

1 | connection, with the hearing on this motion.

2 | Dated: March 28, 2010

DONIGER & FETTER

By: _____

Henry D. Fetter,  Attorneys for
Defendant Promofilm US LLC

C:\Users\OFFICE\Desktop\backup\client leg. files\P1073\001\Notice SummaryJudgmentMotion.wpd

3

1  Thomas Doniger  (Bar No. 76263)
   Henry D. Fetter (Bar No. 76382)
2  DONIGER & FETTER
   2229 N. Berendo Street
3  Los Angeles, California 90027
   (323) 660-9700
4  donigerandfetter@yahoo.com

5  Attorneys for
   Defendant Promofilm US LLC,
6

7

8              UNITED STATES DISTRICT COURT

9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  LUFTU MURAT UCKARDESLER,        )  CASE NO. CV 09-01467 JFW (MANx)
    GLOBAL AGENCY, LTD.             )
12                                  )  Assigned to the Honorable
             Plaintiffs,            )  John F. Walter
13                                  )
        v.                          )  **DEFENDANT PROMOFILM US, LLC'S**
14                                  )  **MEMORANDUM OF POINTS AND**
    KAZA AZTECA AMERICA, INC., DBA  )  **AUTHORITIES IN SUPPORT OF**
15  AZTECA AMERICA, PROMOFILMS US   )  **MOTION FOR SUMMARY JUDGMENT**
    LLC, AND DOES 1 THROUGH 10,     )  **ETC;  Declarations of Thomas Doniger,**
16                                  )  **Pelin Akat, Ellen Seiter, Martin Halac and**
             Defendants.            )  **Aviva Bergman, Statement of**
17                                  )  **Uncontroverted Facts and Conclusions of**
                                    )  **Law, [Proposed] Statement of Decision and**
18                                  )  **Excerpts of Depositions,  Filed**
                                    )  **Concurrently Herewith [F.R.Civ.P.**
19                                  )  **56(b)(d)]**
                                    )
20                                  )  Date:      April 26, 2010
                                    )  Time:       1:30 p.m.
21                                  )  Courtroom: 16
                                    )
22  _____ )  Trial Date: June 8, 2010
                                       Pre-Trial Conf. Date:
23                                     May 21, 2010

24

25

26

27

28

──────────────────────────────────────────────
PROMOFILM'S MEMO OF Ps&As IN SUPPORT OF MOT. FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTORY STATEMENT ................................. 1

II.   STATEMENT OF FACTS ...................................... 2

    A.    The Parties. ........................................... 2

    B.    Nature of the Allegedly Infringed Works. ...................... 3

    C.    The Series of Marriage-themed Programs Which Preceded Plaintiffs' Format. ............................................. 3

    D.    Promofilm's Acquisition of a Format License from Sinevizyon and the Production and Broadcast of 'Suegras' in the United States. .......... 5

III.  SUMMARY JUDGMENT STANDARD ............................. 7

IV.  LEGAL ARGUMENT ......................................... 7

    A.    Summary Judgment Should Be Entered Against Global On The Copyright Claims Because Global Lacks Standing to Sue for Copyright Infringement. ................................... 7

    B.    The Ideas and "Cultural Process" in the Format Are Not "Protectable". ......................................... 8

    C.    Plaintiffs' Infringement Claim Does Not Satisfy The Extrinsic Test Applicable On This Motion... ............................... 9

        1.    The Extrinsic Test Requires a Comparison Between The Protectable Elements Only of the Works in Question. ...................... 9

        2.    Plaintiffs' Admissions in Discovery Indisputably Prove That Elements Relied Upon By Plaintiffs To Show "Similarity" Are Not Protectable. ........................... 11

            a.    Jewelry Company Infomercial-style Advertising Within the Show, As Opposed To A Commercial. ........................ 11

            b.    Inclusion of a Mother-in-law Who May Eliminate a Candidate. ...... 12

            c.    Public Chooses a Favorite Bride Candidate Who May Eliminate A Mother and Son. ..................................... 12

            d.    Choice of Contestants (Non-Celebrity, Contestants Likely to Elicit Tension), Turkish Belly Dancing. ....................... 13

            e.    On Air Readings by Candidates of Messaged [sic] From Viewers. ..... 14

            f.    Exercise Training Visit to House. ........................... 14

1

**TABLE OF CONTENTS**
**(Continued)**

2

Page

3

   g.   Bride Candidates Live With Mother-In-Law. . . . . . . . . . . . . . . . . . . . .  14

4

   h.   Host Is Part of the Show Throughout the Season Including
5          Prime Time Shows.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

6    3.   Many of the Allegedly Protectable Program Elements Claimed
          by Plaintiffs Were Not Original With Plaintiff but Were Instead
7          Included in the Predecessor Program Series of Marriage
          Themed Reality Shows.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

8

9    4.   Plaintiffs Cannot Satisfy The Elements Of The Extrinsic Test
          For "Substantial Similarity". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

10    5.   Plaintiffs' Format And Bible Do Not Present A Protectable
          Arrangement Or Combination Of Elements.  . . . . . . . . . . . . . . . . . . . .  19

11

12    6.   The Second Claim For Relief Is Similarly Subject To Summary
          Judgment.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

13  V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page**

3 **Cases:**

4 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) ...................... 7

5 Attia v. Society of the New York Hospital, 201 F. 3d 50,
6 54 (2d. Cir., 1999) ...................................................... 8

7 Bourne Co. v. Hunter Country Club, Inc., 990 F. 2d 934
937 (7th Cir., 1993) .................................................... 8

8 ETS-Hokin v. Skyy, 225 F3d 1068,1082 (9th Cir., 2000)) ...................... 10

9 Feist Publications v. Rural Telephone Serv. Co., 499 US 340,349, 111 S. Ct.
1282 (1991) ...................................................... 9, 16
10

Funky Films, Inc. V. Time Warner Entertainment Company, L.P., 462 F.3d 1072,
11 1077 (9th Cir. 2006) .................................................. 10

12 Kouf v. Walt Disney Pictures & Television, 16 F.3d 1042,
1045 (9th Cir.1994). .................................................. 9
13

Milano v. NBC Universal, Inc., 584 F.Supp. 2d. 1288,
14 1295 (C.D. Cal, 2008) ...................................... 1, 3, 8, 17, 18

15 Mazer v. Stein, 347 U.S. 201, 217, 98 L. Ed. 630,
74 S. Ct. 460 ( 1954) ................................................... 2
16

Newton v. Diamond, 388 F.3d 1189 (9th Cir., 2003) cert. denied 545 U.S. 1114;
17 125 S. Ct. 2905; 162 L. Ed. 2d 294 (2005) ....................................

18 Rice v. Fox Broadcasting Company, 330 F.3d. 1170, 1174 (9th Cir. 2003) ............ 8

19 Rosenthal Jewelry Corp. v. Kalpakian, 446 F. 2d 738,
741 (9th Cir., 1971) ................................................... 9
20

Silvers v. Sony Pictures Entertainment, 402 F.3d 881, 885 (9th Cir., 2005) ....... 7
21

Satava v. Lowry, 323 F.3d 805, 810 (9th Cir.2003) ........................ 10, 19
22

Zella v. E.W. Scripps Co., 529 F.Supp.2d 1124, 1134,
23 1137 (C.D. Cal. 2007) ................................................ 15

24
25
26
27
28

1

2

**TABLE OF AUTHORITIES**
(Continued)

3

**Page**

**Statutes and Rules:**

4

17 USC § 102(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

5

17 USC § 501(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

6

F.R.Civ.P.56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.

## INTRODUCTORY STATEMENT

This case presents another example of a plaintiff seeking to capitalize on "the current rage for so-called 'reality' programming" by inserting an unprotectable element into a stock reality television format and claiming protection for his work under The Copyright Act.  Milano v. NBC Universal, Inc., 584 F.Supp. 2d. 1288, 1295 (C.D. Cal, 2008).

Plaintiffs Luftu Murat Uckardesler ("Uckardesler") and Global Agency, Ltd. ("Global") allege (First Claim for Relief) that defendant Promofilm US, LLC ("Promofilm") infringed plaintiffs' copyrights in a format for a reality dating/marriage  television series by producing a Spanish language television program entitled "Suegras" (in English, "Mothers-in-Law").  By licensing Suegras for broadcast in the United States by defendant Azteca International Corporation ("Azteca"), plaintiffs allege that Promofilm also became liable for contributory copyright infringement (Second Claim for Relief).[1]

No published case has yet provided copyright protection for a television format – less a reality television format which slavishly conforms to the genre's stock conventions, as here. Television formats do not satisfy the extrinsic test of objective similarity of expression, applicable on motion for summary judgment, which requires proof of substantial similarity of plot, theme, dialogue, mood, setting, pace, characters and sequence of events.  To a greater extent in reality television formats, the protectable elements necessary to satisfy the extrinsic test for similarity of expression are either absent, generic, scenes a faire or  exist only at the level of unprotectable ideas.  This case presents no exception to prior case law because plaintiffs have done nothing more than insert one unoriginal idea, the participation of mothers-in-law, into a pre-existing stock, marriage/dating themed, elimination reality format.

Plaintiffs assert their claim notwithstanding the fact that the core ideas (ideas are, of course, unprotectable in any event) of the works at issue are radically different.  The idea underlying plaintiffs' format is that a mother in law, in accordance with a "Turkish cultural

---

[1]The First and Second Claims for Relief are the only claims alleged against Promofilm. The Third, Fourth and Fifth Claims for Relief are alleged against Azteca only.

1

1  process," chooses a bride for her son.  In Suegras, by contrast, the viewing audience votes for a
2  couple to be wed. [Sep. St. No. 1]

3      Assuming plaintiffs' idea were  original and that Promofilm copied that original idea,
4  there could be no liability for infringement:

5      "[o]riginal and creative ideas, however, are not copyrightable, because 17 U.S.C. §
6      102(b)  provides that 'in no case does copyright protection for an original work of
7      authorship extend to any idea, procedure, process, system, method of operation,
8      concept, principle, or discovery, regardless of [its] form.'  Section 102(b)  codifies
9      the common-law principle that 'unlike a patent, a copyright  gives no exclusive
10     right to the art disclosed; protection is given only to the expression of the idea -
11     not the idea itself.'"  Mazer v. Stein, 347 U.S. 201, 217, 98 L. Ed. 630, 74 S. Ct.
12     460 ( 1954)

13     Finally, even if plaintiffs' work contained protectable elements, which it does not,
14 summary judgment should be granted  because there is no "substantial similarity," under the
15 applicable extrinsic test, between Suegras and plaintiffs' work.  They are different programs
16 which share a few stock conventions of the reality, marriage/dating themed elimination genre, as
17 do all other programs in the genre.

18                                    II.

19                          STATEMENT OF FACTS

20     A.      The Parties.

21     Uckardesler is a citizen  of Turkey.  Global, a United Kingdom based company, alleges
22 that it is the "exclusive agent for licensing Plaintiff Uckardesller's format" pursuant to the terms
23 of a written Representation Contract with Uckardesler executed in November 2006.  Izzet
24 Ressam is the managing director of Global.  [Sep. St. No. 2, 4]

25     Promofilm is a producer of Spanish language television programming with its principal
26 place of business in Florida.  Azteca is a Spanish language broadcast network.  [Sep. St. No.
27 14,15]

28

                                       2

1         **B.**     <u>Nature of the Allegedly Infringed Works.</u>

2         Uckardesler claims to have created a 2½ page television format, in the Turkish language,

3 and that he "copyrighted the format in Turkey on or about July 20, 2004". The format consists of

4 2 ½ pages: 1 ½ pages consist of "rules" and alternative titles and the remaining one page states

5 the "goal" and "flow" of the program. [Sep. St. No. 1] Plaintiffs also allege that the 2½ page

6 format was licensed for production of a reality televison program, "Gelinim Olur Musun" (in

7 English, "Will You be my Bride/Daughter-in-Law?"), in Turkey that was broadcast in that

8 country between September and December 2004. [Sep. St. No. 2]

9         Uckardesler also claims to have written a seventy page production bible entitled the

10 "Perfect Bride Project" (the "Bible") that was allegedly created in 2004 but not registered in the

11 United States Copyright Office until January 2008, almost one year after broadcast of Suegras.

12 The Bible is a promotional and production manual with instructions for promoting and producing

13 a program based on the concept briefly described in the format. [Sep. St. No. 1, 3]

14         Both the format and the Bible have minimal, even potentially protectable, expressive

15 content. The 2 ½ page format presents only an admittedly "conceptual" premise for a reality

16 television program. See, <u>Milano v. NBC Universal, Inc.</u>, 584 F. Supp. 2d 1288, 1295 (C.D. Cal.

17 2008). The Bible consists almost entirely of promotional and advertising ideas, pre-production

18 and production methods, and rules and procedures for the elimination contest. [Sep. St. No. 1, 3]

19         Except where otherwise indicated, the format and Bible will be referred to collectively

20 herein as the "Format."

21         **C.**     <u>The Series of Marriage-themed Programs Which Preceded Plaintiffs' Format.</u>

22         Sinevizyon Medya Tantum ve Filmicik Programmlari Ya. Tic. A.S. ("Sinevizyon"), a

23 Turkish production company, produced a series of eight marriage themed, elimination reality

24 shows which were first broadcast in Turkey on September 26, 2003. Production and broadcast of

25 the first four of these series (the "Predecessor Programs") predate Uckardesler's alleged creation

26 of the Format in July 2004. The Predecessor Programs, together with their air dates on Show TV

27 in Turkey, are listed below:

28

1     a.     Ben Evleniuyorum ("I Am Getting Married"): September 26, 2003-December 1,

2              2003;

3     b.     Biz Evleniyoruz ("We Are Getting Married"): December 13, 2003-February 27,

4              2004;

5     c.     Sevda Masali ("Love Story"): February 28, 2004-May 10, 2004; and

6     d.     Kalplerde Ikinci Bahar ("The Second Spring" [Love at a Later Age]): May 8, 2004-

7              July 9, 2004. [Sep. St. No. 5]

8     Each of these series was produced and broadcast prior to creation of the Format and

9 broadcast of the show known as "Gelinim Olur Musun," (in English, "Will You Be My Bride

10 /Daughter-In-Law?") which aired on Show TV from September 18, 2004 to December 17, 2004 as

11 the fifth series of marriage themed elimination shows, and which Uckardesler claims was based on

12 his Format. [Sep. St. No. 6] Pelin Akat was the executive producer of all eight series, including

13 "Gelinim Olur Musun", which was produced by Sinevizyon under contract with AKS Televizyon

14 Reklamcilik ve Filmcilik Sanayi Tic. A.S. ("AKS"). [Sep. St. No. 7]

15     Each of the Predecessor Programs, as well as "Gelinim Olur Musun," was a reality genre,

16 marriage/dating themed elimination program – each was unscripted and the participants were not

17 actors. Accordingly, there was no plot, dialogue or characters in the sense that dramatic works

18 contain such elements. The participants were real people, selected by the producers, and they were

19 unscripted, speaking what came to their minds. Even the producers could not predict the "plot" in

20 the sense that the plot was determined by the participants and the viewers and not planned in

21 advance, by writers or producers. [Sep. St. No. 8]

22     As the Predecessor Programs show, almost all of the elements of the Format were already

23 in place before Uckardesler claims to have created the Format. These include the following

24 elements: (a) each of the shows was an "elimination program" in the sense that both bride

25 candidates and groom candidates were eliminated to produce a "winner," as the show progressed;

26 (b) elimination of bride and groom candidates was accomplished through both audience

27 "televoting" (including text voting by the viewers) and the choices of the bride and groom

28 candidates; (c) both the bride and groom candidates were isolated from society and lived in

4

1  separate houses; (d) the show participants were video "monitored" such that the audience views
2  the participants and the men and women have the opportunity to observe each other; (e) the
3  eliminations are announced during dramatic "decision" ceremonial proceedings; (f) candidates can
4  receive "protection" from elimination under certain circumstances; (g) if all goes well, the show,
5  which may last 8 to 13 weeks, ends with a proposal and marriage between two of the participants;
6  (h) the communications between the men and women  candidates are controlled for dramatic
7  purposes such that they  may not communicate except as provided for by the producers; (i) the
8  host participates in each show, conducting interviews with the candidates, eliciting confessions,
9  provoking controversy and reading comments from viewers; (j) various celebrity and non-celebrity
10  "visitors" may visit the candidates from time to time, and some introduce activities to the
11  candidates, for example massage, sports, dancing, exercise, etc.; (k) if a wedding is to occur, the
12  wedding preparations receive prominence; (l) the candidates carry out the daily chores of
13  communal life within their houses; (m) all of the participants were non-celebrities; (n) the
14  participants engaged in many different activities; and (o) the participants were selected by the
15  producers to present certain dramatic "types" and to create conflict - for example "shy, innocent
16  girl", "the sexy, experienced man-eater", "the strong macho male", "the sensitive emotional male",
17  etc.  While many of the elements of these shows remained constant, as required by the genre itself,
18  other elements were varied from series to series. [Sep. St. No. 9]

19       Uckardesler was aware of the Predecessor Programs that Sinevizyon had produced in
20  Turkey. [Sep. St. No. 10]  His 2 ½ page Format for a reality television dating/marriage program
21  expressly acknowledges that it is intended to add an element to the Sinevizyon shows by "putting
22  in mother of groom candidates at <u>exactly in the middle of marriage programs</u> realized by
23  participants of bride and groom candidates til now..." [Emphasis added]  [Sep. St. No. 11].

24       D.       Promofilm's Acquisition of a Format License from Sinevizyon and the Production
25               and Broadcast of 'Suegras" in the  United States.

26       There is no evidence that Promofilm had access to either the Format or the Bible. [Sep.
27  St. No. 12]  Promofilm acquired the right to produce a reality television series  "based, in whole
28  or in  part" on a format known as "May I Call You Mom" from Sinevizyon under the terms of a

5

1 Format License Agreement, dated as of October 15, 2006. [Sep. St. No. 13]   Under the terms of a
2 Program License Agreement between Promofilm and Azteca , dated as of November 6, 2006,
3 Promofilm was engaged to produce, for broadcast by Azteca, a reality, marriage-themed program
4 in which mothers of the groom candidates participated. [Sep. St. No. 14]   Pursuant to those
5 agreements,  Promofilm produced "Suegras", which was broadcast by Azteca  in the United States
6 Spanish language televison market in 60 episodes over ten weeks beginning in March, 2007.
7 [Sep. St. No. 15]

8        For purposes of comparing the Format to Suegras, the head writer and director of Suegras
9 have compiled the 32 page Suegras Summary (Exhibit 13 to the Declaration of Martin Halac),
10 which describes the show as broadcast. DVDs of Suegras episodes are also being lodged with the
11 Court. [Sep. St. No. 15]

12        Unlike the Format, Suegras involved predetermined storylines with an emphasis on sexual
13 relationships between attractive young characters similar to the telenovelas (soap operas) that have
14 historically dominated Spanish-language television. [Sep. St. No. 16]  Of particular importance is
15 that the role and prominence of the mother-in-law idea are different in Suegras than in the Format.
16 The Format centers on the figure of the domineering mother; Suegras does not.  The mothers in
17 the Format are the most important cast members.  By contrast, the mothers are secondary cast
18 members in Suegras, playing subordinate roles compared to the sexy young female contestants.
19 The majority of screen time in Suegras is devoted to the young men and women, often in romantic
20 situations away from the house. The decision-making role of the mothers in law is far less
21 important in Suegras than it is in plaintiff's Format - perhaps attributable to the uniqueness of  the
22 "Turkish cultural process" that the Format intends to depict.

23        In particular, in Suegras "in the 10th week, The Final Week, the viewers will vote to
24 choose the couple that has won the competition and the prize." Suegras Summary at 12, [Sep. St.
25 No. 17]  In the Format, it is the mother-in-law who selects the bride for her  son.  Bible at 60, [
26 Sep. St. No. 18]

27

28

6

1                                          III.

2                          SUMMARY JUDGMENT STANDARD

3          Summary judgment is proper where "the pleadings, depositions, answers to interrogatories,

4   and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

5   to any material fact and that the moving party is entitled to a judgment as a matter of law."  F. R.

6   Civ. P. 56(c).  On a motion for summary judgment, this Court must decide whether there exist

7   "any genuine factual issues that properly can be resolved only by a finder of fact because they may

8   reasonably be resolved in favor either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250

9   (1986).

10                                         IV

11                          LEGAL ARGUMENT

12        A.        Summary Judgment Should Be Entered Against Global On The Copyright Claims

13                  Because Global Lacks Standing to Sue for Copyright Infringement.

14         Section 501(b) of the Copyright Act "establishes who is legally entitled to sue for

15  infringement of copyright".  Silvers v. Sony Pictures Entertainment, 402 F.3d 881, 885 (9th Cir.,

16  2005).  That statute expressly provides, in pertinent part, that only  "the legal or beneficial owner

17  of an exclusive right under a copyright is entitled...to institute an action for infringement of that

18  particular right committed while he or she is the owner of it." 17 USC §501(b) (Emphasis added).

19  [Sep. St. No. 19]

20         Both the allegations of the complaint, and the uncontroverted evidence, prove that Global

21  is *not* an owner with standing to sue for the infringement alleged.  The complaint alleges only that

22  Global "is the exclusive agent for licensing Plaintiff Uckardesler's Bride format," and does not

23  allege that Global holds any ownership interest in the alleged copyrights sued on.  The parties'

24  "Representation Contract," attached as Exhibit 3 to the complaint, does not grant any ownership

25  interest in those copyrights to Global.  The Representation Contract expressly identifies

26  Uckardesler as the "Format Owner," and expressly provides that  "the parties have agreed that the

27  label and format rights of the Format belongs to the Format Owner Murat Uckardesler."  Global

28  was engaged to " to make presentations, sales meetings and collection of the sales payments."

                                              7

1    [Sep. St. No. 20]   The Representation Contract provides that "the right to sign contracts with the
2    third parties exclusively belongs to the Format Owner," and that, if Global "acts in excess of his
3    power and signs contracts with third parties, these contracts do not bind the Format Owner and
4    they do not cause them to be responsible for those contracts."   [Sep. St. No. 20]

5        The deposition testimony of both Uckardesler and Global's managing director, Izzet
6    Ressam, confirmed that the "Representation Contract" sets forth their entire agreement with
7    respect to the Format at issue.  [Sep. St. No. 21]  "A licensing agent is neither the legal or
8    beneficial owner of the copyright and has no interest in the copyright."  Bourne Co. v. Hunter
9    Country Club, Inc., 990 F. 2d 934, 937 (7th Cir., 1993)  [Sep. St. No. 22]  The allegations of the
10   complaint, and the terms of the Representation Contract, establish that Global was only a sales or
11   licensing agent and held no ownership interest in the copyrights that remained vested in
12   Uckardesler.  Accordingly, Global lacks standing to sue for copyright infringement under the
13   express terms of the Copyright Act.  Global's claims are subject to summary judgment.

14       B.  The Ideas and  "Cultural Process" in the Format Are Not "Protectable".

15       Preliminarily, it is, of course, true that  " ideas generally do not receive protection, only the
16   expression of such ideas do. [citation]."   Rice v. Fox Broadcasting Company, 330 F.3d. 1170,
17   1174 (9th Cir. 2003).  As appears to be the rule in reality television format litigation, this case
18   presents yet another example of a plaintiff seeking copyright protection for a work that "is largely
19   conceptual  and describes what is essentially an idea which is not protected under copyright."
20   Milano v. NBC Universal, Inc., 584 F. Supp. 2d at 1295.  That idea is plaintiffs' inclusion in a
21   stock, reality, dating/marriage elimination show a decision-making role for prospective mothers-
22   in-law.  Plaintiffs' idea is not protectable as a matter of law. 17 USC § 102(b).

23       Further undermining any claim for protection of this "idea" is plaintiffs' admission that his
24   idea incorporates into the Format "the Turkish cultural process by which mothers choose brides
25   for their sons." [Sep. St. No. 25]   There can be no copyright protection for such a "cultural
26   process," Turkish or otherwise.   A "cultural process" is a fact, and cannot be "original" with the
27   "author." Copyright law does not protect facts. Attia v. Society of the New York Hospital, 201 F.
28   3d 50, 54 (2d. Cir., 1999). "No matter how much original authorship the work displays the facts

8

1  and ideas it expresses are free for the taking...."  <u>Feist Publications v. Rural Telephone Serv. Co.</u>,

2  499 US 340,349, 111 S. Ct. 1282 (1991).

3       Plaintiffs cannot monopolize the right to depict this "Turkish cultural process" any more

4  than the creator of the realistic turtle pin in <u>Rosenthal Jewelry Corp. v. Kalpakian</u>, 446 F. 2d 738,

5  741 (9th Cir., 1971) could monopolize the right to realistically depict a turtle in a jewelry pin. Such

6  depictions of reality "are the common heritage of mankind, and no artist may use copyright law to

7  prevent others from depicting them."  <u>Id</u>.  Thus, plaintiffs primary claim to having created

8  protectable subject matter by inserting a mother/son "cultural process" into a reality television

9  format is not protectable at all and does not even trigger analysis under the extrinsic test at all.

10      C.    <u>Plaintiffs' Infringement Claim Does Not Satisfy The Extrinsic Test Applicable On</u>

11            <u>This Motion.</u>

12      1.    <u>The Extrinsic Test Requires a Comparison Between The Protectable Elements Only</u>

13            <u>of the Works in Question.</u>

14      In a copyright infringement action, the essential element of actual copying "'may be

15  established by showing that the works in question are substantially similar in their protected

16  elements' and that the infringing party 'had access' to the copyrighted work [citation]."  <u>Rice v.</u>

17  <u>Fox Broadcasting Company</u>, 330 F.3d.1170, 1174 (9th Cir. 2003).  On this motion, even if the

18  Court determines that plaintiff's unprotectable "idea" warrants further analysis under the extrinsic

19  test, there is no genuine issue of material fact as to "substantial similarity" once that test is applied.

20  As stated in <u>Rice v. Fox Broadcasting Company</u>, 330 F. 3d at 1174:

21          To determine whether two works are substantially similar, a two-part analysis – an

22        extrinsic test and an intrinsic test – is applied. Id. at 1073. "For summary judgment, only

23        the extrinsic test is important." <u>Kouf v. Walt Disney Pictures & Television</u>, 16 F.3d 1042,

24        1045 (9th Cir.1994). "[A] plaintiff who cannot satisfy the extrinsic test necessarily loses on

25        summary judgment, because a jury may not find substantial similarity without evidence on

26        both the extrinsic and intrinsic tests." Id.

27          As we have previously stated, the extrinsic test is an <u>objective measure of the</u>

28        <u>"articulable similarities between the plot, themes, dialogue, mood, setting, pace,</u>

9

---

1    characters, and sequence of events." Id. (citation and internal quotation marks omitted). In

2    applying the extrinsic test, we must distinguish between the protectable and unprotectable

3    material because a party claiming infringement may place "no reliance upon any similarity

4    in expression resulting from unprotectable elements." Apple Computer, Inc. v. Microsoft

5    Corp., 35 F.3d 1435, 1446 (9th Cir.1994) (citation and internal quotation marks

6    omitted)." [emphasis added].   [Sep. St. No. 23]

7    Furthermore, in applying the extrinsic test,  the Court "compares, not the basic plot ideas

8    for stories  but the actual concrete elements" in the works in question.  Funky Films, Inc. V. Time

9    Warner Entertainment Company, L.P., 462 F.3d 1072, 1077 (9th Cir. 2006). [ Sep. St. No. 24]

10   The Copyright Act, 17 U.S.C. §102(b) provides that "[i]n no case does copyright protection for an

11   original work of authorship extend to any idea, procedure, process, system, method of operation...,

12   regardless of the form in which it is described, explained, illustrated or embodied in such work."

13   Further, under the doctrine of "scenes a faire," "[e]xpressions that are standard, stock, or

14   common to a particular subject matter or medium are not protectable under copyright law.[n3]

15   See v. Durang, 711 F.2d 141, 143 (9th Cir. 1983)." Satava v. Lowry, 323 F.3d 805, 810 (9th

16   Cir.2003).  As a result, "courts will not protect a copyrighted work from infringement if the

17   expression embodied in the work necessarily flows from a commonplace idea.....the rationale is

18   that there should be no monopoly on the underlying unprotectable idea. (Citation)" ETS-Hokin

19   v. Skyy, 225 F3d 1068,1082 (9th Cir., 2000). Here, the elements of the Format which plaintiffs

20   claim are protectable constitute stock, scenes a faire of the reality genre. [Sep. St. No. 26]

21   The uncontroverted evidence establishes here that the allegedly protectable elements upon

22   which plaintiffs base their claims are not protectable because they are variously: (1) unprotectable

23   ideas; (2) stock elements of the Predecessor Programs, not original and, therefore, not protectable;

24   (3) scenes a faire or stock and standard elements of the reality genre; and (4) elements not present

25   in Suegras at all.  Accordingly, application of the extrinsic test, as detailed below, establishes that

26   plaintiffs' copyright infringement claim does not raise any genuine issue of material fact for trial.

27

28

1     In applying the extrinsic test for substantial similarity, the ideas, facts and scenes a faire

2 for which plaintiffs claim protection may not be considered as protectable expression to compare

3 to any similar elements in Suegras.

4     2.    <u>Plaintiffs' Admissions in Discovery Indisputably Prove That Elements Relied</u>

5        <u>Upon By Plaintiffs To Show "Similarity" Are Not Protectable.</u>

6     In their Further Response to Interrogatory No. 1, plaintiffs identified the items of

7 'individual protectable expression' in plaintiff's Format that you contend defendant Promofilm

8 copied as alleged in paragraph 47 of the Complaint" as follows:

9     (a) jewelry company infomercial-style advertising within the show as opposed to a

10    commercial,

11    (b) mother-in-law of the week is chosen by the public via text messaging and if mother-

12    in-law of the week names an "unprotected" bride candidate she gets eliminated,

13    (c) public chooses, by text message voting, their favorite bride candidate of the week and

14    she can eliminate a mother and her son,

15    (d) choice of contestants (non-celebrity, contestants likely to elicit tension), Turkish belly

16    dancing,

17    (e) on-air reading by candidates of messaged [sic] from viewers,

18    (f) exercise training visit to the house,

19    (g) Bride candidates live with mother-in-law,

20    (h) host is part of the show, throughout the season including prime-time shows."

21    [Sep. St. No. 27]

22     Thus, plaintiffs' claims to copyright infringement of protectable expression rest entirely

23 upon the protectability of these eight elements. However,  none of these elements, which plaintiff

24 admits are "ideas", is protectable expression and many are not included in plaintiffs' Format or in

25 Suegras <u>at all</u>.

26    a.    <u>Jewelry Company Infomercial-style Advertising Within the Show, As Opposed To</u>

27        <u>A Commercial.</u>

28    Plaintiff's understanding of the term "infomercial style advertising" is that it "would stand

11

1 for a program maybe 10 minutes or longer that would promote a specific product - to sell that
2 product." There are no infomercials in Suegras. [Sep. St. No. 28] Contrary to plaintiff's
3 interrogatory answer, Suegras was aired with traditional commercials shown during commercial
4 breaks. [Sep. St. No. 28] Accordingly, the claimed "protectable" idea, consisting of infomercials
5 in lieu of traditional commercials, is not present in Suegras. Thus, the first element cannot
6 support a claim of infringement. Moreover, infomercial-style advertising and product placement
7 are not original protectable expression, in any event, because they dates back to the early game
8 shows of the '50s' and '60s' when they were used to promote the prizes given away on game
9 shows. Infomercials have thus been a staple element of television for at least fifty years. [Sep. St.
10 No. 29]

11       b.    Inclusion of a Mother-in-law Who May Eliminate a Candidate.

12      Both plaintiff's Format and Suegras contain the element of a potential mother-in-law
13 participating in the show. This element is not protectable and Uckardesler admits that "he does
14 not have the right to preclude others from exhibiting television shows in which the contestants and
15 participants appear with their relatives." [Sep. St. No. 30]

16      Nor is the inclusion of a potential mother-in-law in a television show original with either
17 the Format or Suegras. Mothers-in-law have played varying roles in both series television and
18 reality television for years prior to both the Format and Suegras. [Sep. St. No. 31]
19 Marriage/dating themed programs, in the reality genre, which predate the Format and include
20 potential mothers-in-law include "Outback Jack" and "The Bachelorette". [Sep. St. No. 32]
21 Thus, the participation of a potential mother-in-law in this genre is not original protectable
22 expression. This element may not form part of the extrinsic comparison of the Format and
23 Suegras.

24      The element of having the viewing audience select a participant to "win," receive a prize,
25 be eliminated, eliminate others or otherwise be singled out, has origins long ago in the "applause
26 meter" in "Queen for a Day," the well known television show of the 1950s'. Other examples are
27 myriad. Examples of reality elimination television shows employing text voting are also myriad.
28 Moreover, plaintiff has admitted that text voting is not protectable. [Sep. St. No. 33]

12

1      Similarly, the element of a participant in an elimination show being "protected" from

2 elimination is not unique to the Format or Suegras. Plaintiff admits that he was not the creator of

3 "protection" for a contestant, and that his Format was not the first to include that concept. [Sep.

4 St. No. 34]

5      c.    <u>Public Chooses a Favorite Bride Candidate Who May Eliminate A Mother and</u>

6            <u>Son.</u>

7      This element is <u>not</u> present in Suegras.  In Suegras, by week seven of the show, "couples"

8 are established such that there is a connection between each of the remaining 6 bride candidates

9 and one of the 6 groom candidates.  From the seventh week of Suegras on, when a bride candidate

10 is eliminated (by the other bride candidates or a mother-in-law), the paired groom (and groom's

11 mother) are automatically eliminated with her.   There is no mechanism in Suegras for direct

12 elimination of groom candidates, as in the Format.  Nor is there, in the Format, a mechanism for

13 elimination of bride, groom and groom's mother "as a unit." [Sep. St. No. 35]  Thus, although

14 plaintiff claims that this element is evidence of "substantial similarity," in fact it is strong

15 evidence of the dissimilarity between the Format and Suegras.  However, such elimination

16 schemes are not, in any event, protectable – they are standard elements of the elimination genre.

17      d.    <u>Choice of Contestants (Non-Celebrity, Contestants Likely to Elicit Tension),</u>

18            <u>Turkish Belly Dancing.</u>

19      Producers of television programming have traditionally selected the contestants and

20 participants whom they believe are "likely to elicit tension."  Plaintiffs admit that the selection of

21 participants who will agitate one another and create tension is not protectable.  [Sep. St. No. 36]

22      There is no reference to Turkish belly dancing in the Format.  Nor is Turkish belly

23 dancing an activity which plaintiffs alone may depict on television, even if the Format referred to

24 that form of dancing.  Various forms of erotic dancing have always been included as an activity in

25 marriage-themed elimination shows because dancing exhibits the sexuality and attractiveness of

26 the female candidates. [Sep. St. No. 37]  Plaintiff Uckardesler admits that he does not have "the

27 right to preclude anyone from including all kinds of dancing in a television show."   [Sep. St. No.

28 38]  Thus, this element, too, may not be used in the extrinsic test to determine substantial

13

1 similarity.

2        e.       <u>On Air Readings by Candidates of Messaged [sic] From Viewers.</u>

3        In Suegras, this element was <u>not</u> present.  There were no on-air readings by participants of

4 messages from the viewers. [Sep. St. No. 39]  Nor is this stock element original or protectable in

5 any case.

6        f.       <u>Exercise Training Visit to House.</u>

7        Suegras, like the many similar marriage/dating-themed elimination shows, did have

8 exercise training as one of the many activities the candidates engaged in.  Like dancing or

9 swimming, this is an activity traditionally used in this genre because it reveals the men's and

10 women's bodies and is a scene a faire in the genre. [Sep. St. No. 40]   Plaintiff correctly admits

11 that he does not have the right to preclude anyone from "depicting physical training or workout."

12 [Sep. St. No. 41]  Thus, this element may not be used for comparing under the extrinsic test.

13        g.       <u>Bride Candidates Live With Mother-In-Law.</u>

14        Although, in the Format and Suegras, the brides live with the mothers in law,  the living

15 arrangements described in the Format and in Suegras are different.  The Format required

16 separation of the participants in the show from each other with the mothers-in-law and brides

17 living separately from the groom candidates.  In the Format, 6 bride contestants "...are taken to an

18 isolated secondary section of the house where the sons can watch them on video when they are

19 entering the house.  At last, the mother contestants and the prospective bride contestants are by

20 themselves.  And unfortunately the prospective groom contestants have to be audience to the

21 events for a while."   Thus, the men are not in direct communication with the women, although

22 they can sometimes address them.     In contrast, in Suegras, the existence of the Common Area

23 and the non-exclusivity of the Masculine and Feminine Areas reflect the different focus of

24 Suegras which intends that "the single women and men will experience in accelerated speed what

25 in their ordinary lives will take several years of initiatives and reversals, successful decisions,

26 mistakes, infatuations, cheating and disappointments." [Sep. St. No. 42]  Uckardesler also admits

27 that he does not have "the right to prevent anyone from putting on a television show on which the

28 participants or contestants are compelled to live in one house."   [Sep. St. No1 43]  Such

1  compelled confinement to a limited area is an unprotectable stock element of the reality television
2  genre because it is frequently used to enhance tension and conflict and reduce the expense and
3  practical difficulty of following and taping the participants. [Sep. St. No. 44]

4        h.    Host Is Part of the Show Throughout the Season Including Prime Time Shows.

5       The Format makes no reference to a host at all or to the role to be performed by a host,
6  although the subsequent Bible does refer to a "Presenter." Suegras did have a hostess who
7  performed the traditional and important function of a television host. However, as a matter of
8  law, a host is not protectable. Zella v. E.W. Scripps Co., 529 F.Supp.2d 1124, 1134, 1137 (C.D.
9  Cal. 2007). It is a stock, scene a faire of the genre. [Sep. St. No. 45]

10       The host allows viewers, who have missed shows or who are coming to the program after
11  it has begun, to receive summaries and recaps in order to be brought up to date on past events. In
12  this way, the show will not lose audience members who, for any reason, missed shows or failed to
13  begin watching the show during its first week. The host also performs the important function of
14  provoking conflict, eliciting drama, and various other dramatic functions commonly performed by
15  hosts on television. Hosts have been a part of television since its invention in the 40's and are a
16  regular part of the reality genre. [Sep. St. 45]

17      3.    Many of the Allegedly Protectable Program Elements Claimed by Plaintiffs Were
18             Not Original With Plaintiff but were instead Included in the Predecessor Program
19             Series of Marriage Themed Reality Shows.

20       The extrinsic test compares only protectable expression. Therefore, those elements
21  included in the Predecessor Programs produced by Sinevizyon, and therefore not original with
22  plaintiff, must be excluded in conducting an extrinsic comparison between the Format and
23  Suegras.

24       However, almost all of the items of allegedly protectable expression, identified in Further
25  Response to Interrogatory No. 1, had already been featured in the Predecessor Programs produced
26  by Sinevizyon, including: candidate eliminations by viewer text voting; the host participating in
27  each show, conducting interviews with the candidates, eliciting confessions, provoking
28  controversy and reading comments from viewers; the contestants are non-celebrities; the

1   participants engaged in activities - sports, dancing, exercise, etc.; protection, against elimination
2   and the participants were selected to present certain dramatic "types" and to create conflict. [Sep.
3   St. No. 46]

4       With respect to the elements that plaintiff "borrowed" from the Predecessor Programs
5   produced by Sinevizyon, plaintiff cannot claim copyright protection for the fundamental reason
6   that these elements were not original with him (or with the Predecessor Programs). As the Supreme
7   Court has held, "the sine qua non of copyright is originality." Feist Publications, Inc. v. Rural Tel.
8   Serv. Co., Inc., 499 U.S. 340, 345, 111 S. Ct. 1282, 1287, 113 L. Ed. 2d 358 (1991).

9       These prior, non-original and, by definition, non-protectable elements cannot form part of
10  the extrinsic analysis for this additional reason.

11      4.   Plaintiffs Cannot Satisfy The Elements Of The Extrinsic Test For "Substantial
12           Similarity".

13      Application of the extrinsic test to protectable elements, if any, in plaintiffs' Format
14  establishes a lack of the "concrete " and "'articulable similarities between the plot, themes,
15  dialogue, mood, setting, pace, characters, and sequence of events' in the two works' (citation)"
16  [Funky Films, Inc. V. Time Warner Entertainment Company, L.P., 462 F.3d 1072, 1077 (9th Cir.
17  2006)], necessary to avoid summary judgment.  Moreover, even some similarity of protectable
18  elements is not sufficient – significant use of such elements must be present:

19      "For an unauthorized use of a copyrighted work to be actionable, the use must be
20       significant enough to constitute infringement. See Ringgold v. Black Entertainment
21       TV, 126 F.3d 70, 74-75 (2d Cir. 1997). This means that even where the fact of
22       copying is conceded, no legal consequences will follow from that fact unless the
23       copying is substantial. [citation]  The principle that trivial copying does not
24       constitute actionable infringement has long been a part of copyright law. Indeed, as
25       Judge Learned Hand observed over 80 years ago: "Even where there is some
26       copying, that fact is not conclusive of infringement. Some copying is permitted. In
27       addition to copying, it must be shown that this has been done to an unfair extent."

28

16

1     West Publ'g Co. v. Edward Thompson Co., 169 F. 833, 861 (E.D.N.Y. 1909)."

2     Newton v. Diamond, 388 F.3d 1189 (9th Cir., 2003) cert. denied 545 U.S. 1114;

3     125 S. Ct. 2905; 162 L. Ed. 2d 294 (2005).

4     With respect to "plot," as was true in Milano v. NBC Universal, Inc., the Format

5 "describes no plot as that term is normally used. Rather, it outlines a contest structure which...is not

6 original and therefore not protectable. The plot...(as in all reality programming) essentially

7 developed extemporaneously as the viewer observes what happens when the contestants live out

8 the experience in front of omnipresent cameras." 584 F. Supp. 2d at 1297. This is not a protectable

9 "plot," if indeed it is a "plot" at all. Suegras, by comparison, has predetermined plot elements

10 derived from traditional Spanish language telenovelas as noted above at page 6. [Sep. St. No. 47]

11     As to "dialogue", the Format is an "unscripted" reality program and so this element "is not

12 relevant to reality programming," Milano v. NBC Universal, Inc., 584 F. Supp. 2d at 1297, at all by

13 definition. [Sep. St. No. 48]

14     As to "character", the Format calls for "casting" contestants with a variety of attributes -

15 passive, aggressive, intellectual, modern, beautiful, gentle, sweet, macho , etc. - which are entirely

16 cliched, stock and derivative and hence not protectable. [Sep. St. No. 49]  Further, as noted above

17 at 6, the "role" of the mother-in-law is central to the Format in a way that is not true in Suegras.

18     As to "theme," plaintiff Uckardesler described it as "the relationship between the mother,

19 son and the bride-to-be and it analyzes that complex relationship in its complexity" [Sep. St. No.

20 50] , an unprotectable, universal idea if ever there was one.

21     As to "pace," all that can be derived from the Format or Bible is that the program would be

22 broadcast in daily installments over several weeks, once again, part and parcel of generic television

23 program scheduling and surely not protectable. [Sep. St. No. 51]

24     As to "mood," even assuming a written document can have a "mood," plaintiff has claimed

25 only that "the mood of my format is entertaining, also – it's tragic" [Sep. St. No. 52] which again is

26 manifestly insufficient to secure protection.

27     As to "setting," isolating the competitors in an enclosed environment is a well-established

28 staple of reality television and any similarities arising therefrom are "commonplace " and not

1   protectable. <u>Milano v. NBC Universal, Inc.</u>, 554 F. Supp. 2d at 1297. [ Sep. St. No. 53].

2   Furthermore, the living arrangements among the prospective bride, groom and mother in law

3   contestants are different in the Format and Suegras, as described above at page 15.

4         Finally, as to the "sequence of events", the Format describes little more than an

5   introduction/interview/discussion/personal interaction process by which the original contestants are

6   winnowed down and successively eliminated.  As plaintiff's Format itself stated it was a "classical

7   elimination process," an express admission that it is a "stock element" of the  reality  genre. [ Sep.

8   St.  No. 54]

9         In  reality, elimination shows  portraying dating and a forced living environment, scenes

10   occur in a logical order due to the demands of building suspense in an elimination show that is

11   "stripped" (i.e. broadcast at least five days a week in the same time slot each weekday, often with a

12   summary show on the weekend,  as was true with respect to  Suegras).  All reality television

13   programs that culminate in prize winner(s) and a celebratory event will follow a substantially

14   similar and common-place selection, order,  and arrangement of scenes.  Many of these will be

15   repeated throughout the show, either with different contestants, or with different challenges, or

16   before different panels of judges or competitors. [Sep. St. No. 55]

17        By comparison, Suegras features  a detailed competition/elimination structure, for which

18   there is no counterpart in plaintiff's sketchy and "conceptual" Format.  In Suegras the

19   dating/marriage competition is organized around a concrete, sequential series of weekly

20   "challenges" that will determine the outcome of the competition: a women's challenge each week,

21   judged by a jury of the mothers in law, which yields a winner who can choose a suitor to date

22   subject to mother in law veto; a men's challenge each week, judged by a jury of the women, which

23   yields a winner who can choose one of the women for a date.  The women vote among themselves

24   to eliminate one of their group; a mother in law of the week is chosen by the viewers who can then

25   eliminate one of the women; the winners of the men's challenge can ask a woman who has been

26   eliminated on a date and thereby preventing her elimination, etc. and so on. [Sep. St.  No. 56]

27   <u>None of this challenge and judging process which makes up the basic structure of the elimination</u>

28   <u>competition in Suegras is similar to the Format at all.</u>

18

1        5.    <u>Plaintiffs' Format And Bible Do Not Present A Protectable Arrangement Or</u>

2                <u>Combination Of Elements.</u>

3       Finally, plaintiffs have asserted a claim for copyright protection for their arrangement of

4 elements. In their Further Response to Interrogatory No. 4, plaintiffs contended that "...plaintiffs

5 selected, arranged and combined the Turkish cultural process by which mothers choose brides for

6 their sons, paired it with a voyeuristic dating concept, added merchandise advertising by the show's

7 host, provided a unique elimination concept and caused such expression to be broadcast first in the

8 country of Turkey." [Sep. St. No. 57]  As stated in their Further Response to Interrogatory No. 2,

9 "plaintiff maintains that the manner by which non-protectable expressions are arranged may create

10 protectable expression. "...For purposes of facilitating discovery, plaintiff respond as follows:

11 Some non-protectable elements include, but are not limited to (a) text voting, (b) wedding

12 ceremony, (c) candidate confessions, (d) candidates agitating one another, (e) conflicts between

13 contestants, (f) choice of wedding gowns, (g) proposals, (h) serial elimination of contestants, (i)

14 modern house setting, (j) romantic dating scenes, (k) slim, brunette renowned model host, (l)

15 mothers, bride candidates and groom candidates live in separate rooms within one house, mothers

16 and sons are interviewed together during casting process. [Sep. St. No. 58]

17       This response does <u>not</u> describe the requisite <u>original</u>  ordering, arrangement or

18 combination – it is a list of unprotectable elements.  The test for copyright protection for an

19 arrangement or combination of unprotectable elements is stated in <u>Satava v. Lowry</u>, 323 F.3d <u>supra</u>

20 at 811:

21        "Our case law suggests, and we hold today, that a combination of unprotectable

22        elements is eligible for copyright protection only if those elements are numerous

23        enough and their selection and arrangement original enough that their combination

24        constitutes an original work of authorship. See <u>Metcalf</u>, 294 F.3d at 1074; <u>Apple</u>

25        <u>Computer, Inc.</u>, 35 F.3d at 1446. See also <u>Feist</u>, 499 U.S. at 358 ("[T]he principal

26        focus should be on whether the selection, coordination, and arrangement are

27        sufficiently original to merit protection.")."

28        Plaintiff's contended for, copyright protection for this "arrangement, sequencing and

19

1 combination" is insufficient under <u>Satava</u>.  First, in plaintiffs' interrogatory responses <u>no</u>

2 <u>arrangement or sequencing is presented at all, less an original one.</u>  [Sep. St. No. 59] Second,

3 plaintiff Uckardesler has admitted that he did not "arrange the elements that already existed in

4 other shows in any new way" [ Sep. St. No. 60] and, as shown above, the elements of the Format

5 had been previously present in many prior shows including the Predecessor Programs.[2]  Third, in

6 any event, the combination of these unprotectable ideas and elements is "standard, stock and

7 common," and therefore not protectable.  In sum, plaintiffs cannot claim a protectable arrangement

8 of elements to salvage an otherwise insufficient infringement claim based upon unprotectable

9 elements that cannot satisfy the extrinsic test.

10      6.     <u>The Second Claim For Relief Is Similarly Subject To Summary Judgment.</u>

11          In addition to the First Claim for Relief for Copyright Infringement, plaintiffs allege  a

12 second Claim for Relief for Contributory Copyright Infringement, incorporating all of the

13 allegations of the First Claim.  The Second Claim for Relief then alleges that by, entering into the

14 Program License Agreement with  defendant Azteca , and producing Suegras for broadcast by

15 Azteca, defendant Promofilm induced defendant Azteca to infringe plaintiffs' copyright in the

16 Format.  Compl. Second Claim for Relief, ¶¶ 51 -62. [Sep. St. No. 62]  The claim of contributory

17 infringement is, therefore, entirely dependent on the sufficiency of the First Claim for Relief for

18 Copyright Infringement.  For the reasons stated herein, the First Claim for Relief is subject to

19 summary judgment and the Second Claim for Relief necessarily is as well.

20

21

22

23

24

25

26

27          [2]As Professor Seiter demonstrates, in the reality marriage/dating themed, elimination
genre there is little or no opportunity to arrange or sequence elements in an original way due to
28 the requirements of the genre and the television medium. [Sep. St. No. 61]

20

PROMOFILM'S MEMO OF Ps&As IN SUPPORT OF MOT. FOR SUMMARY JUDGMENT

1

V.

2

CONCLUSION

3       For the foregoing reasons the First and  Second Claims for Relief present no genuine issue

4  of material fact for trial.  Summary Judgment in favor of Promofilm should be granted.  These are

5  the only two claims asserted against Promofilm in the complaint and grant of  this motion entirely

6  resolves the matters at issue between plaintiffs and Promofilm.  Accordingly, there is no just

7  reason to delay entry of a final judgment in favor of Promofilm.

8                                                            Respectfully submitted,

9  Dated: March 29, 2010                                    DONIGER & FETTER

10

11                                                          By:_____
                                                               Henry D. Fetter
12                                                             Attorneys for
                                                               Defendant Promofilm US LLC

13  C:\Users\OFFICE\Desktop\backup\client leg. files\P1073\001\FinalSumJudgMemo.wpd

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28